FILED
COURT OF APPEALS
DIVISION II

2013 DEC -3 AM 9: 23

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43453-9-II |
| Respondent, | |
| v. | |
| CHASE E. CUTTS, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Chase E. Cutts appeals his conviction for second degree trafficking in stolen property. He claims that the State failed to present sufficient evidence to support his conviction and that the trial court erred in admitting irrelevant and unfairly prejudicial evidence. Because the State sufficiently proved Cutts's conviction and the trial court did not err in admitting relevant evidence, we affirm.

## FACTS

In October 2011, someone stole chain saws and weed-eaters from Skamania Lodge. Kevin Bligh, a mechanic responsible for keeping inventory at Skamania Lodge, provided Skamania County Sheriff's Deputy Michael Hepner with a list of the stolen power tools and their serial or inventory numbers.

In January 2012, Chad Hayes, a confidential informant working with the Skamania County Sheriff's Office, informed Detective Tracy Wyckoff that he believed Cutts was selling

some of the stolen chain saws and weed-eaters. Detective Wyckoff instructed Hayes to arrange to purchase some of the tools. Hayes called Cutts, and Cutts offered to sell one chain saw and two weed-eaters to Hayes for $300. Hayes agreed to the price and told Cutts that he was going to make an extra $50 by reselling the tools. Cutts also suggested that they complete the transaction at Cutts's girlfriend's father's—Brian Nicklaus's—house, where Cutts stored the tools. When Hayes went inside Nicklaus's home to purchase the chain saw and two weed-eaters for $300, Cutts gave Hayes an extra chain saw at no additional cost.

After Hayes turned over the tools to the deputies, Deputy Hepner compared the tools' serial numbers to the serial numbers Bligh had reported stolen in October. Three of the four serial numbers matched; the fourth power tool matched the Skamania Lodge's records by a number "59" inventory sticker. 2 Verbatim Report of Proceedings (VRP) at 207. Subsequently, the State charged Cutts with one count of first degree trafficking in stolen property.[1]

Before trial, the State sought to admit testimony that Hayes had told deputies that Cutts was selling "stolen" power tools from Skamania Lodge. 1 VRP at 39-43. Over Cutts's hearsay objection, the trial court granted the State's motion because the testimony was not offered for its truth and was "clearly relevant" because Hayes's statement led "the officers to do other things." 1 VRP at 46.

At trial, the State offered Nicklaus's testimony regarding statements Cutts made to Nicklaus about the chain saws. The State asked Nicklaus if Cutts had made any connection

---

[1] The State also charged Cutts with one count of second degree possession of stolen property; however, the State moved to dismiss that count before trial.

2

between the chain saws Cutts was storing in Nicklaus's garage and the chain saws Cutts used during the summer of 2011 to carve wood. After Nicklaus answered, "No," the State reminded Nicklaus of the written statement he signed under the penalty of perjury which said that Cutts had told him the chain saws stored in Nicklaus's garage were the same chain saws Cutts used the previous summer to carve wood. 2 VRP at 221. Nicklaus then testified that Cutts had indeed said that these chain saws were the ones Cutts had used to carve wood during the summer of 2011.[2]

The State also offered testimony from Hayes and the deputies about the sale's circumstances. Hayes testified that when he called Cutts to arrange the purchase, Cutts suggested the $300 price for a chain saw and two weed-eaters, and Hayes accepted, saying he would make an extra $50 by reselling the power tools. Hayes also testified that when he met Cutts to purchase the tools, Cutts gave him an extra chain saw at no additional charge. Detective Garrity testified that the power tools were the high-end "Stihl" brand. 2 VRP at 169. Detective Garrity and Deputy Hepner testified that the burglary occurred in Skamania County in October of 2011, and that the sale to Hayes occurred in Skamania County in January of 2012. Additionally, Bligh and Deputy Hepner testified that the stolen power tools' serial numbers matched the serial numbers on the tools Skamania Lodge reported stolen, and that one of the chain saws still had a "59" inventory sticker on it. 2 VRP at 207; 3 VRP at 258.

---

[2] Cutts later called Nicklaus as a witness, and Nicklaus testified that the connection between the chain saws in the garage and the chain saws Cutts used to carve wood the previous summer was something Nicklaus had deduced on his own. On cross-examination, the State impeached Nicklaus with his testimony from the previous day and his inconsistent written statement.

The trial court instructed the jury on first degree trafficking in stolen property and the lesser included offense of second degree trafficking in stolen property. The jury convicted Cutts of second degree trafficking in stolen property.

## ANALYSIS

### I. SUFFICIENT EVIDENCE

Cutts first argues the State offered insufficient evidence to support his second degree trafficking in stolen property conviction. We disagree.

We review claims of insufficient evidence to determine whether, "after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We draw all reasonable inferences from the evidence in favor of the State and against the defendant. *Salinas*, 119 Wn.2d at 201. A sufficiency challenge admits the truth of the State's evidence and all reasonable inferences from it. *State v. Theroff*, 25 Wn. App. 590, 593, 608 P.2d 1254, *aff'd*, 95 Wn.2d 385, 622 P.2d 1240 (1980). We leave credibility determinations to the fact finder and do not review them on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

To prove second degree trafficking in stolen property, the State needed to prove beyond a reasonable doubt that Cutts recklessly trafficked in stolen property. RCW 9A.82.055. A person acts recklessly if he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of that risk is a gross deviation from what a reasonable person would do in the same situation. RCW 9A.08.010(c). Stolen property is property that has been obtained by theft, robbery, or extortion. RCW 9A.82.010(16). To "traffic" means to sell, distribute, or otherwise dispose of stolen property to another person. RCW 9A.82.010(19).

Here, the State offered sufficient evidence to convince any rational trier of fact that Cutts knew of and disregarded a substantial risk that the chain saws and weed-eaters he sold to Hayes were stolen. Nicklaus testified that Cutts had told him that the chain saws Cutts was storing in Nicklaus's garage were the same chain saws Cutts used the previous summer to carve wood. But, it was impossible that the chain saws Cutts sold to Hayes were the same ones Cutts used to carve wood in the summer of 2011 because they were in the Skamania Lodge's possession until someone stole them in October of 2011. Thus, the State demonstrated that Cutts lied to Nicklaus about the chain saws' origins, and the jury could reasonably infer from that lie that Cutts knew the tools were stolen.

In addition, the timing, location, and price of the sale were suspicious. Someone stole the tools from Skamania Lodge less than three months before Cutts sold them to Hayes in the same county in which the burglary occurred. Cutts suggested $300 for one high-end brand chain saw and two high-end brand weed-eaters, and Hayes told Cutts that Hayes was going to make $50 by reselling the tools at a higher cost. Further, Cutts gave Hayes an extra high-end chain saw at the end of the transaction at no additional cost. Although there was no testimony about the actual retail value of Stihl power tools, the jury could reasonably infer, from Hayes's testimony that by including an extra power tool at no cost and Hayes's ability to resell the tools at a markup, that Cutts significantly undervalued the tools to quickly sell them. Finally, one of the power tools Cutts sold still had Skamania Lodge's number "59" inventory sticker on it, and the jury could rationally conclude from common sense and experience that new power tools do not contain inventory stickers. 2 VRP at 207.

When all the evidence is viewed in the light most favorable to the State, any rational trier of fact could have concluded Cutts recklessly knew of and disregarded a substantial risk the tools were stolen. Accordingly, the State presented sufficient evidence to convict Cutts of second degree trafficking in stolen property.

## II. STOLEN PROPERTY TESTIMONY

Cutts next argues that the trial court abused its discretion by allowing Hayes and the deputies to testify over Cutts' objection, that Cutts possessed "stolen property" because the testimony was irrelevant and unfairly prejudicial. Br. of Appellant at 8. Because the trial court did not abuse its discretion, we disagree and this argument fails.

We review evidentiary rulings for an abuse of discretion. *State v. Briejer*, 172 Wn. App. 209, 223, 289 P.3d 698 (2012). A trial court abuses its discretion when it exercises its discretion on untenable grounds or for untenable reasons. *Briejer*, 172 Wn. App. at 223.

Generally, relevant evidence is admissible, and irrelevant evidence is inadmissible. ER 402. Relevant evidence is any evidence that has a tendency "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Relevant evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403.

A trial court may admit testimony as res gestae evidence to complete the story of the crime for the jury. *State v. Grier*, 168 Wn. App. 635, 644, 278 P.3d 225 (2012). Trial courts weigh the probative value of res gestae evidence under ER 403. *Grier*, 168 Wn. App. at 649. For example, in *Grier*, a witness testified that earlier in the evening before Grier shot someone, Grier had waived a gun around and said she could shoot someone if she wanted. 168 Wn. App.

6

at 642. We held that the witness's testimony was relevant and admissible as res gestae evidence because it foreshadowed the shooting later that evening. *Grier*, 168 Wn. App. at 648.

Here, the trial court permitted the testimony because it found that the evidence was relevant to show why the sheriff's office arranged for Hayes to purchase the property from Cutts. While the truth of Hayes's belief was not relevant, Hayes's belief that Cutts possessed stolen property was relevant as res gestae evidence because, like *Grier*, the testimony set the stage for what came later. Hayes's testimony explained why the sheriff's office arranged for Hayes to purchase the tools from Cutts.

Moreover, the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice. The State never implied nor argued that because Hayes believed the property was stolen, Cutts must have stolen the property himself or Cutts knowingly trafficked in stolen property. The testimony simply completed the story for the jury. For these reasons, we cannot say that the trial court abused its discretion.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, J.

We concur:

Hunt, J.

Worswick, C.J.

7